IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. FOSKETT, MARY CHRISTINE
FOSKETT and PHYSICIANS' BENEFITS
TRUST LIFE INSURANCE COMPANY,

       Plaintiffs,

       v.

GREAT WOLF RESORTS, INC. and GREAT
BEAR LODGE OF WISCONSIN DELLS, LLC,

       Defendants/Third-Party Plaintiffs,

v.

NEUMAN POOLS, INC., WATER TECHNOLOGY, INC.,
PROSLIDE TECHNOLOGY INC., LIBERTY SURPLUS
INSURANCE INSURANCE CORPORATION, LEXINGTON
INSURANCE COMPANY, NATIONAL SURETY CORPORATION,
GREAT LAKES SERVICES, LLC, BLACK WOLF LODGE, LLC,
TALL PINES RENTAL LLC, n/k/a J&A REAL ESTATE VENTURE LLC,
TALL PINES REALTY, LLC, TALL PINES DEVELOPMENT
OF WISCONSIN DELLS, LLC, ARCHITECTURAL DESIGN
CONSULTANTS, INC. and PLANNING DESIGN BUILD, INC.

       Third-Party Defendants.

OPINION and ORDER

06-cv-503-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiffs James Foskett and Mary Christine Foskett commenced this personal injury

action against defendants Great Wolf Resorts, Inc. and Great Bear Lodge of Wisconsin

Dells, LLC ( Buyer), alleging that plaintiff James Foskett was injured on a slide at Buyer's

water park.  (Throughout this lawsuit, these two defendants have proceeded as one entity, usually referred to as Great Bear Lodge.  I will continue to treat them as one and refer to them as Buyer.)  Alleging a theory of contributory negligence, Buyer added third-party defendants, including Black Wolf Lodge, LLC, Tall Pines Rental LLC, n/k/a J&A Real Estate Venture LLC, Tall Pines Realty, LLC, and Tall Pines Development of Wisconsin Dells, LLC (collectively, Sellers), all of whom were prior owners of the property sold to Buyer.  Sellers asserted a cross claim for indemnification against Buyer based on provisions in the water park purchase agreement.  Plaintiffs settled with all defendants and third-party defendants, leaving only the indemnification cross claim between Sellers and Buyer.

Judge Shabaz entered summary judgment in favor of Buyer, holding that the agreement did not require Buyer to indemnify Sellers and dismissing Sellers' cross claim. The court of appeals reversed this holding, finding that the agreement entitled Sellers to indemnification, and directed the court to enter judgment in Sellers' favor.   In accordance with the court of appeals' mandate, this court entered judgment directing Buyer to reimburse Sellers for "all reasonable costs and expenses (including, but without limitation, reasonable attorney fees and costs)" incurred in the action.

Sellers filed a timely motion for attorney fees and expenses in accordance with Fed. R. Civ. P. 54(d)(2).  Sellers were jointly represented by counsel Foley & Lardner.  They seek a total of $739,243 in fees and expenses, together with accruing interest.  Third-party

defendant Tall Pines Development of Wisconsin Dells, LLC (the only Tall Pines entity moving for a separate award of fees and costs and hereafter referred to simply as Tall Pines) claims statutory costs and $70,215 in fees paid to counsel Crivello Carlson, S.C., which was hired by Selective Insurance Company of America to defend Tall Pines against the contributory negligence claim under a policy of liability insurance.

Buyer opposes the motions entirely, arguing that recovery is unavailable under the terms of the indemnification provisions of the purchase agreement.  Alternatively, Buyer argues that the amounts requested are unreasonable and must be reduced.  I conclude that the indemnification provisions apply to the settlement amount and to the costs and fees incurred by Sellers except with respect to the fees paid to Crivello by Selective on behalf of third-party defendant Tall Pines and the costs related to the Crivello defense.  I conclude also that because Sellers agreed to pay the fees charged to them by Foley, the fees are market based and therefore reasonable.

From the submissions of the parties, I find the following facts.


FACTS

In November 1999, Buyer purchased Great Wolf Lodge from Sellers.  Section 10 of the purchase agreement, which governs the parties' obligations to indemnify each other, includes the following provisions:

3

As used in this Section 10, the term "Claim" shall include (i) all liabilities; (ii) all losses, damages, judgments, awards, penalties and settlements; (iii) all demands, claims, suits, actions, causes of action, proceedings and assessments; and (iv) all reasonable costs and expenses (including, but without limitation, reasonable attorneys fees and costs) of investigating, defending or successfully asserting any of the foregoing or of successfully enforcing this Agreement.

10.2 <u>By Buyer</u>

Subject to the terms and conditions of this Section 10, Buyer shall indemnify, defend and hold harmless Sellers, their officers, employees, Members and controlling persons from and against all Claims incurred by any such persons by reason of or resulting from: . . . (c) any Claim of or against Sellers, the Purchased Assets or the Business resulting from acts omissions or events occurring on or after the Closing Date.

\*       \*       \*

10.3. (b) <u>Failure to Defend</u>.  If the Indemnifying Party, within a reasonable time after notice of such Claim, fails to defend such Claim actively and in good faith, the Indemnified Party will (upon further notice) have the right to undertake the defense, compromise or settlement of such Claim or consent to the entry of a judgment with respect to such Claim, on behalf of and for the account and risk of the Indemnifying Party, and the Indemnifying Party shall thereafter have no right to challenge the Indemnified Party's defense, compromise, settlement or consent judgment.

\*       \*       \*

10.5. (d) <u>Insurance Offset</u>.  Neither party shall have an obligation to indemnify another party hereto with respect to any Claim under this section 10 to the extent that there are insurance proceeds collectible by the Indemnified Party with

4

respect thereto, regardless of whether the Indemnified Party
chooses to submit a claim against such insurance policy.

On September 11, 2006, plaintiffs brought negligence claims against Buyer seeking more than $10,000,000 in damages.  After Sellers were served with a subpoena by plaintiffs, they hired Foley to represent their interests.  Sellers and their principals had hired Foley for representation in the past and had consistently paid market rate for Foley's legal services. Relying on the possibility of indemnification pursuant to the asset purchase agreement, Foley advised Sellers when it sent them its first bill that Sellers could defer payment until resolution of the indemnification issue.

November and December 2006 billing entries indicate that Foley evaluated various insurance policies to assess potential coverage should Sellers be joined in the action.  This evaluation led third-party defendant Tall Pines to pursue a claim under a policy of liability insurance issued by Selective.  Sellers concluded that there were no other policies of insurance that arguably covered Sellers for claims arising from plaintiff James Foskett's injuries.

On November 21, 2006, Buyer filed a third-party complaint against Sellers for common law contribution for damages attributable to Sellers' negligence.  On December 12, 2006, Sellers sent a letter to Buyer, demanding indemnification from Buyer.  On December 13, 2006, Buyer refused to indemnify Sellers.  On December 18, 2006, Sellers filed a third-

5

party counterclaim against Buyer for breach of the indemnification provision.

In accordance with its contractual obligation to provide a defense to its insured, Selective paid Crivello to provide legal services on behalf of third-party defendant Tall Pines, but only with respect to the contributory negligence claim. Foley continued to represent Tall Pines with respect to the indemnification counterclaim.

On about March 2, 2007, Buyer offered to settle with Sellers for a reciprocal dismissal of their claims against one another. At the time of this offer, Sellers owed Foley more than $300,000 in fees. Sellers rejected the offer, agreeing instead to pay plaintiffs Foskett $100,000 in exchange for their execution of a Pierringer release. Sellers paid plaintiffs $95,000 on April 19, 2007. Selective added $5,000 to the settlement on behalf of Tall Pines.

Sellers incurred attorneys fees and costs for defending against Buyer's claim for contribution and pursuing Sellers' right to indemnification in the total amount of $612,658.98.


OPINION

The issue before the court is the extent of Sellers' entitlement to indemnification under the terms of the asset purchase agreement. Within this inquiry are six distinct issues: (1) whether Sellers are precluded from recovering attorney fees because they have not

6

actually paid the fees; (2) whether Sellers are precluded from recovering attorney fees because the fees were covered by insurance; (3) whether the fees should be reduced because they are unreasonable; (4) whether Sellers can recover the settlement payment to the Fosketts; (5) whether Sellers are entitled to recover prejudgment interest; and (6) whether Tall Pines can recover costs incurred by Crivello in representing Tall Pines.

## A.  Fees Not Actually Paid

Buyer argues that Sellers have sustained no recoverable damages because they have not paid the fees or expenses due to their attorney.  Alternatively, Buyer contends that the failure to pay proves that the fees and expenses are wholly unreasonable.  Neither argument has merit.  There is no genuine dispute that Sellers are legally obligated to pay the fees for which they have been billed by Foley.  Sellers have incurred a loss to the extent of the debt as surely as if they had already paid the fees.   In terms of the language of the agreement, Sellers' obligation to counsel is a "liability" (defined by § 2.1 of the asset purchase agreement to include "any direct or indirect indebtedness"), covered by the definition of "claim" in the indemnification provision and therefore subject to indemnification by Buyer.  A legal liability incurred to an attorney is an "expense" within the meaning of the definition of "claim" and therefore subject to indemnification.

Buyer's second argument supposes that because the fees have not yet been paid, they

7

do not represent market-based fees.  Buyer acknowledges that fees a litigator actually agrees to pay are presumptively set by the market and are therefore reasonable and recoverable. Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996).  However, it asks the court to infer that Sellers' delay in paying the fees is "irrefutable evidence" that the contractual obligation is not real and enforceable and therefore the entire fee request must be denied.   Although there may be circumstances in which a delay in payment would be evidence of the absence of an arm's length transaction or the legitimacy of the right to payment in full, the facts leave no question that in this case the fees reflect a legitimate market rate contract.

It is not disputed that the rates charged were the ordinary rates charged to other clients with similar legal work and to Sellers in previous representation and that Sellers routinely paid these rates in full and on time.  Although indemnification remained a possibility throughout the litigation, reimbursement by Buyer was sufficiently in doubt to give counsel an incentive to economize.  Taco Bell Corp. v. Continental Casualty Co., 388 F.3d 1069, 1075-76 (7th Cir. 2004).  As a practical matter, Foley's failure to insist on immediate payment under the circumstances is entirely rational from a business perspective. It does not suggest that Foley would not ultimately enforce its legal right to payment.  I conclude that Sellers' delay in paying fees does not affect recovery under the  terms of the indemnification provision or negate the presumption of market-based reasonableness.

8

B. Fees Covered by Insurance

Buyer advances two arguments based on the insurance coverage exception of § 10.5(d), which reduces the obligation of indemnification "with respect to any Claim under this section 10 to the extent that there are insurance proceeds collectible by the Indemnified Party with respect thereto." First, Buyer suggests that undisclosed insurance policies may still cover the entire amount of Sellers' claims. Second, Buyer argues that Tall Pines' fees to Crivello are not recoverable because that defense was provided by the insurer pursuant to its obligation under its policy. I reject the first argument and adopt the second.

1. Unidentified policies

The purchase agreement excludes claims from indemnification "to the extent that there are insurance proceeds collectible by the Indemnified Party with respect thereto, regardless of whether the Indemnified Party chooses to submit a claim against such insurance policy." In order to invoke this provision, Buyer must demonstrate the existence of insurance that would have provided coverage for a portion of the amounts Sellers now seek. The only evidence Buyer has mustered is that Foley spent time reviewing policies and concluded that, except for the Selective policy issued to Tall Pines, they provided no arguable coverage. There is no evidence of insurance coverage other than under the Selective policy to Tall Pines. Given the uncertainty of Buyer's obligation to indemnify, Sellers had great

9

incentive to pursue any plausible claim for insurance coverage.

Buyer argues that insurance coverage should be assumed as a consequence of Sellers' failure to disclose insurance policies in discovery.  Buyer's accusation of non-disclosure is based primarily on Fed. R. Civ. P 26(a)(1)(A)(iv), which required Sellers to disclose  "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment."  Nothing in the record supports the conclusion that such policies exist.  The evidence available is consistent with Sellers' representation that they did not believe there were policies meeting the disclosure requirement.  Had Buyer desired to conduct an independent review of all policies, it could have specifically requested them in discovery at any time during the case, as it was fully aware that indemnification was asserted throughout.

## 2. Crivello fees

Regarding the separate fees paid to Crivello by Selective on behalf of Tall Pines, Buyer contends that these are not liabilities incurred by Tall Pines and, in any event, would be excluded from indemnification by the insurance exception provision.  Tall Pines contends that it is too late to argue whether the fees are recoverable.  Alternatively, it argues that the terms of the agreement entitle it to indemnification.  I conclude that the fees are not recoverable.

10

A Rule 54(d)(2) inquiry into the recoverable amount of attorney fees and costs includes not only the reasonableness of the fees, but also the extent of liability for fees as defined by the governing statute or contract. Fed. R. Civ. P. 54(d)(2)(C). Neither party had the opportunity to address these legal issues prior to appeal. It was not the intent or effect of entry of judgment to deny them that right. Both parties have fully and appropriately argued their positions regarding the scope of indemnification liability under the terms of the agreement.

Applying the terms of the agreement to the undisputed facts, neither the letter nor intent of the provision permits Tall Pines to recover fees paid by its insurer. The agreement requires Buyer to indemnify "Sellers, their officers, employees, Members and controlling persons from and against all Claims *incurred by any such persons.*" Tall Pines did not incur any liability for Crivello's fees; Selective incurred that liability. The indemnification provision of the agreement does not indemnify Sellers' insurers. To the contrary, as § 10.5(d) demonstrates, the agreement contemplates that any liabilities subject to insurance coverage will not be subject to indemnification. In broader policy terms, the intent of the indemnification provision is to make Sellers whole, so that they are in as good a position as if Buyer had honored its commitment and defended them from the start. Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., 200 F.3d 518, 519 (7th Cir. 1999). Tall Pines would receive a windfall if it were to receive payment for fees it did not incur or pay, a result

11

clearly contrary to the make-whole intent of the agreement.   Tall Pines is therefore not entitled to recover for fees paid to Crivello by Selective.

## C. Reasonableness of Fees

Sellers seek fees and expenses based on Foley's billings in the total amount of $612,658.98.  Buyer advances a broad array of attacks on the reasonableness of these fees. These attacks can be divided into two basic categories:  first, arguments that Foley spent time pursuing unnecessary, irrelevant or wasteful legal strategies and, second, arguments that the billings reflect inefficiencies and overbilling.  All of the arguments in the first category fail as a matter of law; the items in the second category are judged by the market standard of reasonableness.  Medcom, 200 F.3d at 520.

## 1. Legal strategy

Buyer challenges five strategic litigation choices as unreasonable and unrecoverable: (1) pursuing a potential conflict of interest involving Buyer's counsel;  (2) investigation of potential insurance coverage; (3) pursuing strategies for avoiding personal shareholder liability; (4) delay in seeking summary judgment against Buyer on the indemnification and contribution claims; (5) personally attending depositions.  None of these arguments have legal merit; even if they did, they are precluded by § 10.3(b) of the purchase agreement.

12

Considering the merits of the arguments, I conclude that the legal strategies employed by Sellers were reasonable. Each of these tactics was in the interest of Sellers and necessitated by Buyer's having involved Sellers in the Foskett litigation. Arguments 2, 4 and 5 are especially notable for their irony. The investigation of potential insurance was not only in Sellers' interest, it was in Buyer's interest as well, because any claim for indemnification against Buyer would be reduced by available insurance. Indeed, it is virtually certain that Buyer would accuse Sellers of negligence had they not explored every avenue of potential coverage. The fourth argument, accusing Sellers of moving too slowly for summary judgment on the contribution and indemnification claims, is a direct indictment of Buyer's own legal positions. If Buyer's legal positions on these issues were meritless, it was Buyer's action in pursuing them, not Sellers' action in opposing them, that was the root cause of the litigation expenses. Buyer cannot reasonably complain that Sellers erred in failing to see the inherent weakness in Buyer's legal positions. As to the fifth argument, Buyer is not in a position to fault Sellers' counsel for attending depositions, many of which were noticed by Buyer. Having sued Sellers in contribution on a $10,000,000 tort claim, Buyer should have anticipated that Sellers would take their potential liability seriously enough to attend depositions.

Sellers also had the right to pursue what they believed to be Buyer's counsel's potential conflict of interest because Buyer's counsel had represented Sellers during

13

construction of the water slide at issue.  Counsel's present representation of Buyer posed the potential that information acquired in the earlier representation would prove prejudicial to Sellers.  It was reasonable for Sellers to explore the possibility.  Finally, planning a strategy to minimize the potential impact on individual shareholders and officers of Sellers was not only legally prudent, but consistent with the indemnification requirement that extended not just to Sellers, but also to their officers, members, employees and controlling persons.

Even if Buyer's arguments had merit, they would be precluded by § 10.3(b) of the purchase agreement: "If the Indemnifying Party, within a reasonable time after notice of such Claim, fails to defend such Claim actively and in good faith . . . the Indemnifying Party shall thereafter have no right to challenge the Indemnified Party's defense. . . ."  Each of Buyer's arguments is a challenge to Sellers' defense.  Therefore, it is foreclosed by § 10.3(b).  In an effort to overcome this result, Buyer offers a strained interpretation that the provision applies only if Buyer lacked a good faith basis to challenge indemnification.  Alternatively, Buyer argues that the provision does not apply because Buyer could not reasonably defend against its own claim against Sellers.  I conclude that the provision applies and prevents Buyer from challenging Sellers' tactical decisions concerning the litigation.  The intent of the provision is to preclude Buyer from attacking Sellers' litigation strategy if Sellers are compelled to defend themselves because Buyer fails to fulfill its obligation to defend.  The provision applies if Buyer either fails to defend at all, or undertakes to defend but does not

14

put forth an active and good faith defense.  The fact that Buyer not only failed to defend, but actively sued Sellers surely does not allow Buyer to avoid the effect of the provision.  In choosing to sue Sellers in the face of the indemnification provision, Buyer assumed the risk that it would face the consequences of both paying Sellers' liability and defense costs, and being denied the right to challenge Sellers' litigation decisions.

2. Inefficiencies and overbilling

Buyer first argues that the overall fees were too high, as demonstrated by both Sellers' lack of payment to Foley and the relatively lower fees of Crivello.  Fees that are set by the market are presumptively reasonable, Balcor, 73 F.3d at 153, and the evidence overwhelmingly supports the conclusion that Foley's fees are the fees it charges in the relevant market and the fees that Sellers agreed to pay.   For two reasons, the fact that Crivello's fees were significantly lower does not persuade me that Foley's fees were not market rate.  First, Crivello's fees were negotiated by an insurer in a position to negotiate lower fees because of the volume of litigation business it can offer.  Second, Tall Pines had significantly less liability exposure than the other Sellers, making it reasonable for Selective to pursue the litigation less aggressively and rely on Foley to carry the greater burden.

In a case of contractual indemnification, the reasonableness of staffing and billing is assessed from the standpoint of market standards.  Medcom, 200 F.3d at 520-21.  If

15

attorney bills are such that a commercially reasonable client would pay them, they are reasonable.  This is likely to be the case if bills were issued under circumstances in which indemnification was uncertain.  Id.  Under this standard, none of Buyer's challenges to the reasonableness of Foley's fees can be upheld.  Those challenges include the alleged failure to push tasks to the lowest-billing attorney or employee, use too many employees and bill for travel time and for overhead expenses.  Some of these allegations are internally inconsistent.  For example, striving to use the lowest billing or most efficient employee in every instance will necessarily lead to using more employees.  More important, nothing suggests that these routine assignments and billing decisions were undertaken with less care than if there was no potential for indemnification, or that expenses and costs would have been charged differently.  In short, the fees and costs reflected in the bills from Foley to Sellers were the fees Sellers would have paid regardless of the availability of indemnification.  As  a result, they are fully recoverable.

### D.  Settlement

Sellers obtained a full release of liability from the Fosketts for $100,000.  The indemnification agreement expressly requires Buyer to indemnify Sellers for "settlements."  Nevertheless, Buyer contends that Sellers are not entitled to indemnification for the settlement amount because the agreement was not made in anticipation of potential liability

and was unreasonable. <u>Demensky v. Arlington Plastics Machinery</u>, 2003 WI 15, ¶ 45, 259 Wis. 2d 587, 657 N.W.2d 411.  Specifically, Buyer argues that because Sellers were sued only for contribution by Buyers and not directly by the Fosketts, they had no potential liability to Fosketts and therefore no basis on which to pay any money to them.  Buyer's position is unsupported by the law or facts.

Sellers' decision to pay plaintiffs $100,000 in exchange for a Pierringer release was objectively reasonable.  As third-party defendants, Sellers faced potential liability for a percentage of the Fosketts' claim for up to $10,000,000, by virtue of Buyer's claim for contribution.  The effect of the Pierringer release executed by the Fosketts was to impute to the Fosketts any potential liability Sellers might have, thereby eliminating all of Sellers' potential liability for the Fosketts' injuries by way of the contribution claim. <u>Pierringer v. Hoger</u>, 21 Wis. 2d 182, 191-92, 124 N.W.2d 106 (1963).  Considering the upper limit of potential liability and the uncertainty of liability and damages, and the ongoing accrual of fees, $100,000 seems a reasonable sum to settle the issue of liability.

Buyer argues that because  it had offered to voluntarily dismiss its contribution claim against Sellers "for free," the settlement payment to the Fosketts was gratuitous and unreasonable.  However, Buyer's offer to voluntarily dismiss the contribution claim was contingent on Sellers' dismissal of their indemnification claim against Buyer, at a time when Sellers had accrued more than $300,000 in fees.  It was entirely reasonable for Sellers to

17

conclude that their indemnification claim was worth more than the $100,000 they paid to settle liability, particularly because the indemnification claim would potentially include the settlement amount.  In fact, Buyer's offer to settle for a waiver of the indemnification claim suggests that the $100,000 settlement was a bargain.

Buyer argues in the alternative that at least Sellers cannot recover the $5000 paid by Selective because Sellers did not "incur" that obligation within the meaning of § 10.2 of the agreement and because § 10.5(d) excludes insured liabilities from  indemnification.   Buyer is correct.  Sellers are entitled to recover the $95,000 portion of the settlement not paid by insurance because it is within the scope of the indemnification provision, objectively reasonable and immune from challenge by virtue of § 10.3(b).

### E.  Prejudgment Interest

Under Wisconsin law, prejudgment interest is recoverable at the legal rate of five percent for contract damages from the time demand for payment has been made.  United States Fire Ins. Co.  v. Good Humor Corp., 173 Wis. 2d 804, 833-34, 496 N.W.2d 730 (1993).  To recover prejudgment interest, there must be a fixed amount due that could have been tendered and interest thereby stopped.  Waukesha Concrete Products Co., Inc. v. Capitol Indemnity Corp.  127 Wis. 2d 332, 340, 379 N.W.2d 333 (1985).  The equitable policy supporting the recovery is that a plaintiff should be compensated for the time value

18

of the money he would have had if the payment had been made when due. "The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money — a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead." This analysis applies to recovery of prejudgment interest on attorney fees that a contracting party was obligated to pay under an indemnification provision. Medcom, 200 F.3d at 519.

An award of prejudgment interest to Sellers is appropriate if it is necessary to put Sellers in the same position they would have occupied had Buyer kept its promise to indemnify them. Id. In this case, however, Sellers have neither paid attorney fees nor incurred an interest obligation to Foley on unpaid fees. Given the "nature of the debt," if Buyer had fulfilled its indemnification obligation and paid each of Foley's bills as it became due, Sellers would be in exactly the same position they are now. Just as Sellers incurred no loss from the delayed payment, they would have reaped no benefit by early payment. In some sense this result means that Buyer benefits from Foley's business decision not to insist on prompt payment from Sellers. However, from the proper perspective of an award that compensates Sellers for losses they incurred as a result of Buyer's breach, Sellers have incurred no loss measured by the time value of the fees for the period that fees went unpaid.

Sellers are entitled to recover prejudgment interest on the $95,000 paid to the Fosketts in settlement of their potential tort liability. Had Buyer fulfilled its obligation to

indemnify Sellers for this obligation, Sellers would have had use of the $95,000 from the date of payment. They are entitled to compensation for this loss of use at the rate of 5% from April 19, 2007, to the date of the amended judgment.

### F. Tall Pines' Costs

Tall Pines has submitted a separate bill of costs based on its alleged status as a prevailing party within the meaning of Fed. R. Civ. P. 54(d)(1), seeking to recover costs incurred by Crivello in its representation of Tall Pines for Selective.  However, it is undisputed that Selective and Crivello represented Tall Pines only on the issue of potential liability in contribution to the Fosketts.  Tall Pines did not prevail on that claim, but instead paid money to settle its potential liability to Fosketts.  Because Tall Pines did not prevail on the only issue for which Crivello represented it, it cannot reasonably be deemed a prevailing party for purposes of recovering those costs.  Of course, Tall Pines was a prevailing party on the indemnification counterclaim, but Foley represented it on that claim and those costs have been fully recovered.  Accordingly, the separate bill of costs submitted by Tall Pines is denied entirely for lack of prevailing party status.

### CONCLUSION

Sellers are entitled to recover the following: (1) $612,658.98 in attorney fees and

costs; (2) $95,000 paid in settlement to Fosketts; and (3) $7,184 prejudgment interest on the settlement amount from the date of payment to judgment.  Tall Pines is not separately entitled to recover the $5000 paid by Selective Insurance in settlement, attorney fees incurred and paid by Selective for services rendered by Crivello or costs incurred by Crivello in defending against the contribution claim.

ORDER

IT IS ORDERED that the motion, dkt. #250, and supplemental motion, dkt. # 282, for attorney fees and costs filed by Black Wolf Lodge, LLC, Tall Pines Rental LLC, n/k/a J&A Real Estate Venture LLC, Tall Pines Realty, LLC, and Tall Pines Development of Wisconsin Dells, LLC are GRANTED in the total amount of $714,842.98 and that the separate motion of third party defendant Tall Pines Development of Wisconsin Dells, LLC for attorney fees, dkt. #253, and costs, dkt. #264, and supplemental motion for attorney fees and costs, dkt. #297, are DENIED.   The clerk of court is directed to enter an amended judgment accordingly.

Entered this day of 28th day of October, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge